**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, ) ) ) Plaintiff, ) ) vs. ) ) JAN KLERKS, an individual; and ) STICHTING WOLKENKRABBERS, an ) individual, ) ) Defendants. ) ) | Case No.: 2:10-cv-00741-GMN-LRL **ORDER** |

## INTRODUCTION

Before the Court is Defendant's Motion to Set Aside Default (ECF No. 10), Plaintiff's timely Response (ECF No. 11) and Defendant's Reply (ECF No. 13).

The Court has considered the pleadings and arguments offered by the parties. IT IS HEREBY ORDERED that Defendants' Motion to Set Aside Default (ECF No. 10) is **GRANTED**.

## BACKGROUND

Plaintiff, Righthaven LLC, filed this lawsuit on May 19, 2010 against Defendants, Jan Klerks and Stichting Wolkenkrabbers, alleging copyright infringement. (ECF No. 1). Righthaven filed an Affidavit of Service attesting that Mr. Klerks was personally served with the Summons, Complaint, and exhibits on June 14, 2010 at 3360 South State Street, Chicago, Illinois, 60616. (ECF No. 7). Plaintiff filed a Motion for Entry of Clerk's Default (ECF No. 8) on July 7, 2010, and Default (ECF No. 9) was entered on July 9, 2010. However, before a Default Judgment was entered, Defendants filed this Motion to

Set Aside Default (ECF No. 10) on August 17, 2010.  Plaintiff filed a timely Response on September 3, 2010 (ECF No. 11), and Defendants replied on September 13, 2010 (ECF No. 13).  In his motion, Mr. Klerks denies that he ever received these court papers and contends that his office actually is located at 3410 South State Street, not 3360 South State Street. (Klerks Decl. ¶ 3).  Defendant also claims that he did not learn of the lawsuit until a *Las Vegas Sun* reporter called him. (*Id.* at ¶¶ 4-5).  Defendant obtained a copy of the Complaint through the internet and alleges that he still has not ever been personally served in this case. (*Id.* at ¶ 5).

## DISCUSSION

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004).  As a practical matter, however, courts have broader discretion in evaluating relief from an entry of default.  *See Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000) ("[A] district court's discretion is 'especially broad' when . . . it is entry of default that is being set aside, rather than a default judgment.").  The standard is applied generously and more liberally where only a default has been entered with no accompanying default judgment. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630-31 (7th Cir. 2009); *In re OCA, Inc.*, 551 F.3d 359, 370 (5th Cir. 2008).

The Ninth Circuit has held that there are three factors to be considered when weighing whether or not there is good cause: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; or (3) whether reopening the default judgment would prejudice the plaintiff.  *Franchise Holding*

*II*, 375 F.3d at 925.  "Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1996).

### A. Defendant's Culpable Conduct

A defendant's conduct is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Employee Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007) (quoting *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001)).  As this court has noted in another case:

> Under this prong, where a defendant has received actual or constructive notice that suit has been filed and has intentionally failed to answer, a court may find that there has been culpable conduct leading to the default.  *See* [*Knoebber*, 244 F.3d] at 697.  In this context, "intentional" means that the defendant acted willfully, deliberately, or in bad faith.  *Id*. Where a defendant negligently failed to answer, but then offers a "good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process," a court will find that the defendant has not acted intentionally. *Id*. Culpable conduct involves "not simply nonappearance following receipt of notice of the action, but rather conduct which hindered judicial proceedings." *Id*. at 698.

*Ernestberg v. Mortgage Investors Group*, No. 2:08-cv-01304-RCJ-RJJ, 2009 WL 160241, at *2 (D. Nev. Jan. 22, 2009).

Defendant claims that he was never properly served with a summons and complaint and that his office is located at a different address.  Further, once Defendant learned that Righthaven was claiming that service had been effected, he promptly retained counsel and filed the instant motion.  This evidence does not demonstrate

culpability on Defendant's part.  The fact that he sought counsel shortly after he received constructive notice from the news reporter that Righthaven was claiming to have effected service, and then also promptly filed this motion before a default judgment was requested, shows that Defendant was trying to cooperate with judicial proceedings in good faith, not hinder them.  Therefore, this factor weighs in favor of setting aside the clerk's default.

**B.      Meritorious Defense**

As to the second factor--whether Defendant has a meritorious defense, a party needs to "demonstrate facts or law showing the trial court that a sufficient defense is assertable." *Knoebber*, 244 F.3d at 699.  "[T]he burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Id.* at 700.

   *i.      Fair Use*

Fair use of a copyrighted work is a valid defense to an allegation of infringement of copyright under the Copyright Act. 17 U.S.C. § 107.  The Copyright Act directs a court to analyze four factors when the defendant asserts the affirmative defense of fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1117-18 (D. Nev. 2006).  All factors are to be explored and weighed together in light of the purposes of copyright when evaluating fair use. *Campbell v. Acuff-Rose Music*, *Inc.*, 510 U.S. 569, 578 114 S. Ct. 1164, 1171

(1994). Noncommercial, nonprofit activity is presumptively fair. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 448, 104 S.Ct. 774, 792 (1984). This is because a use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create. *Id.* at 450. If the intended use is for a noncommercial purpose, the likelihood of harm must be demonstrated. *Sony*, 464 U.S. at 451, 104 S.Ct. at 793.

The first factor relates to the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes. Defendant argues that the allegedly infringing article was posted by a third-party to an informational, non-commercial website maintained by Defendant and that this website is dedicated to sharing information about skyscrapers and urban development among enthusiasts around the world. As it can be properly asserted and reasonably argued in this case that the article was posted by a reader of the Defendant's site for the non-commercial purpose of sharing information and not for the purpose of making a profit for the reader or the site, the first factor is sufficiently satisfied and weighs in favor of setting aside the default.

The second factor considers the nature of the copyrighted work. Defendant argues that the copyrighted work was largely informational, meaning that it is more likely to fall within the realm of fair use. *See Los Angeles News Serv. v. Reuters Television Int'l Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998); *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1153-54 (9th Cir. 1986) ("The scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved."); s*ee also Harper & Row Publishers, Inc. v. National Enterprises*, 471 U.S. 539, 563, 105 S. Ct. 2218, 2232 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."). Plaintiff argues that, even though the subject of the work

is based largely on fact, creativity was needed to structure the contents of the article. Acknowledging that a news article may require some degree of creativity in order to appeal to its reader, the court nevertheless does agree with the Defendant that the article is primarily informational and, therefore, finds that this second factor also weighs in favor of the Defendant.

Defendant does not deny that the third factor, which examines the amount and substantiality of the portion used in relation to the copyrighted work as a whole, is a factor weighing against him, as the entire allegedly infringing article was posted on his website's forum.

Finally, in regard to the fourth factor--the effect of the use upon the potential market for or value of the copyrighted work, Defendant argues that posting the allegedly infringing article did not have any impact on the market for the original work because the same article was viewable to the public for free on the *Las Vegas Review-Journal's* website and is still available to anyone for free through a Google search for the article. However, Plaintiff argues that it is entitled to a presumption of market harm because of the commercial elements surrounding the infringing activities, such as its own advertisement rates and the number of advertisers listed on the infringing website. Plaintiff also argues that the infringement is non-transformative because it is merely a copied-and-pasted reprint of the work in its entirety. This factual contradiction does not equate to an unmeritorious defense, but, rather, weighs in favor of the Defendant, as it raises issues that would need to be resolved later in the litigation, were the court to grant the motion to set aside default.

Despite these factual contradictions raised by Plaintiff, when one considers the facts provided to the court and weighs all of the above factors, Defendant has asserted a sufficiently meritorious affirmative defense of fair use. It is important to note that the

1 standard imposed under this factor test is whether or not the defense is reasonably
2 assertable, not whether Defendant will actually succeed on this particular defense.

### ii. *Implied License*

Perhaps Defendant's most meritorious defense is his other affirmative defense, implied license. "An implied license can be found where the copyright holder engages in conduct from which the other party may properly infer that the owner consents to his use." *Field*, 412 F. Supp. 2d at 1116 (internal quotation marks omitted). Defendant argues that the original copyright holder offered the article to the world for free, encouraged people to save and share the article with others without restrictions, and permitted users to "right-click" and copy the article from its website. Plaintiff argues that it gave no such license to the Defendant, or anyone else. Plaintiff instead claims that allowing users to hyperlink to its page is demonstratively different than allowing users to copy the entire article. Plaintiff argues that allowing a user to copy an entire article and post it to the user's website is similar to allowing a user to copy a library book and distribute the copies; a practice that it notes is illegal under current copyright laws. Even though Plaintiff is correct in regard to the redistribution of complete hard copies derived from a copyrighted library book in physical form, Defendant has still made a plausible argument based on the recent cases addressing the copying of works taken from the internet. The Defendant has reasonably asserted that the Plaintiff's conduct may have constituted an implied license and that the Defendant may have properly inferred that the owner consented to the use, especially in light of the established and accepted custom of users freely and openly sharing certain information

/ / /

/ / /

/ / /

posted on the internet[1]. Thus, Defendant has asserted a sufficiently plausible affirmative defense to warrant setting aside the default. Defendant also claims a third meritorious defense but as he has already met his burden, it is not necessary for the court to address it at this time.

**C.   Prejudice to Plaintiff**

The third factor, prejudice to Plaintiff, turns on "whether plaintiff's ability to pursue his claim will be hindered." *Id.* at 701 (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). Plaintiff does not argue that it will be prejudiced if the suit goes forward. In light of this and the fact that Plaintiff has aggressively pursued over 100 similar suits alleging copyright infringement, allowing one more to proceed should not prejudice Plaintiff.

## CONCLUSION

Defendant has satisfied the Ninth Circuit's three-factor test to set aside default. Therefore, this Court HEREBY ORDERS THAT Defendant's Motion to Set Aside Default is GRANTED.

DATED this 17th day of September, 2010.

_____
Gloria M. Navarro
United States District Judge

---

[1]  As the internet has developed into more of an opt-out system, the argument has been made that only the act of sharing information from websites that actively choose to be removed from participating in the system is generally recognized as unacceptable, despite the Copyright Act being an opt-in system. John S. Sieman, Comment, *Using the Implied License to Inject Common Sense into Digital Copyright*, 85 N.C. L. Rev. 885, 887-93 (2007).